UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EI ELECTRONICS LLC (D/B/A ELECTRO INDUSTRIES/GAUGE TECH) a Delaware Limited Liability Company and DANIEL ODIHI<br><br>Plaintiffs,<br><br>         Against<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant | Case No.:  18-6385<br><br><br>COMPLAINT |

# COMPLAINT

## I. INTRODUCTION

1. Plaintiffs  EI Electronics LLC ( d/b/a Electro Industries/Gauge Tech), (EIG) and Daniel Odihi bring this action against the United States Citizenship and Immigration Services (USCIS or the agency) under 5 U.S.C. § 706,  seeking judicial review of the agency's decision denying EIG's petition to classify Mr.  Odihi as a nonimmigrant under 8 U.S.C. § 1101(a)(15)(H)(i)(B), as well as to change his nonimmigrant status to H-1B.  Inasmuch as the USCIS's own regulations provide that Engineering is a specialty occupation, the agency concedes that the job offered Mr. Odihi is that of a Sales Engineer, both the Department of Labor

| | |
|---|---|
| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |

sponsored Occupation Information Network and its own Occupational Outlook Handbook show that the occupation of Sales Engineer offered Mr. Odihi normally requires a Bachelor's degree in Engineering or a related field, and the USCIS intentionally failed to consider the petition under 8 C.F.R. § 214.2(h)(4)(iii)(A)(3), therefore the USCIS's decision is not in accordance with the law nor supported by substantial evidence in the record, and so should be held unlawful and set aside.

## II. PLAINTIFFS

3. EIG is a Delaware limited liability company with its principal place of business in Westbury, New York.

4. EIG was founded to create the first multifunction meter in 1975. It engineers and manufactures power-metering instruments to monitor power information within substations, industrial facilities, and commercial buildings. It offers transient recording power, energy and power quality, and mid-range substation and primary customer power meters; multifunction socket form meters, including multifunction energy meters; multifunction switch board meters; meter assemblies, and triple display voltmeters and ammeters; data-logging Wi-Fi submeters, single function panel meters, and portable power quality analyzers; modular enterprise-wide energy management monitoring software systems, etc.

5. The company also provides wireless radios, including wireless access point and Ethernet remote radios; instrument transformers, control power, current, and three phase delta and phase Wye voltage transformers; switchboard accessories, including power brick power supplies, instrumentation surge protectors, panel meter protective fuse kits, six pole CT shorting

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

blocks, and FT switches; and optical/serial cables, as well as accessories, including power brick power supplies, instrumentation surge protectors, panel meter protective fuse kits, six pole CT shorting blocks, and FT switches; and optical/serial cables.

6. EIG has been issued numerous patents and trademarks in the field of metering, and serves electrical providers in the United States and internationally.  EIG has now become one of the leading metering suppliers in the world, with hundreds of thousands of power metering instruments installed and providing metering worldwide. Exhibit A at 24-25. As of February 29, 2018, it had 105 employees a gross annual income of $31.1 million and net annual income of $4.3 million. Exhibit A at 10.

7. Daniel Odihi is a native and citizen of Nigeria who is lawfully employed by EIG at its offices in Westbury, New York as an F-1 nonimmigrant pursuant to USCIS-issued "post completion optional practical training" employment authorization valid until July 13, 2019. Exhibit A at 51. He holds a Bachelor of Science degree from Purdue University in Engineering. Exhibit A at 42.

8. The defendant, United States Citizenship and Immigration Services (USCIS), is an agency of the United States government residing in the District of Columbia.

IV. JURISDICTION

9. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701,

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

*et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

## V. STANDING

10. EIG has a legally protected interest in a decision by the USCIS on EIG's petition upon Mr. Odihi's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and the invasion of this right has caused it concrete and particularized injury in that as a result of this invasion EIG will no longer be legally permitted to employ Mr. Odihi after July 13, 2019, and so will not be able to derive the benefits it is accustomed to gaining from his services; (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of EIG's petition and Mr. Odihi's application for change of status which will prevent him from working for EIG and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable EIG to employ Mr. Odihi again and so once more derive benefits from this services. Accordingly, EIG has standing to complain of this action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

11. Mr. Odihi likewise has a legally protected interest in a decision by the USCIS on EIG's petition upon his behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded inasmuch as because of the improper denial of this petition his application for change of status has also been

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

denied. The invasion of this right has caused him concrete and particularized injury in that as a result of this invasion he can no longer be employed by EIG after July 13, 2019, and so will be unable to derive the revenue he currently receives from his employment and his presence in the United States will become unlawful;  (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of EIG's petition and Mr. Odihi's application for change of status  which will prevents him from working for EIG after July 13, 2019, and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable EIG to employ Mr. Odihi after July 13, 2019 and so enable him to support himself and lawfully remain in the United States. Further, EIG wishes to employ Mr. Odihi in the offered position. Accordingly, Mr. Odihi has standing to complain of this action. *Lujan*, *supra*.

## VI. VENUE

12.  10.  Pursuant to 28 U.S.C. § 1391(e), venue is proper in the judicial district for the Eastern District of New York inasmuch as the plaintiff has its principal place of business here and is subject to the personal jurisdiction of this Court.

13. Further, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, including the offer of employment as a Sales Engineer to Mr. Odihi, the marshalling of all of the evidence, and the review and execution of various papers submitted in this matter, including the Petition for Nonimmigrant Worker (Form I-129) and supporting letter filed by EIG in this matter.

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

VII. CONCISE STATEMENT OF FACTS

14. On April 12, 2018, EIG filed a Form I-129, Petition for a Nonimmigrant Worker to classify Daniel Odihi under 8 U.S.C. § 1101(H)(i)(b), which pertains to a foreign national "who is coming temporarily to the United States to perform services … in a specialty occupation described in section 214(i)(1) (of the Immigration and Nationality Act (8 USC § 1184(i))." Such specialty occupations include "engineering". 8 C.F.R. § 214.2(h)(4)(ii).

15. In this petition EIG indicated it wish to employed Daniel Odihi as a sales engineer, Exhibit A at 9. EIG indicated that in this job Mr. Odihi will sell appropriate power meters based on his analysis of customers' electrical distribution systems, which requires extensive knowledge of the scientific aspects of measuring electric power, and in-depth technical knowledge and skills relating to the power meters' parts, assembly, and functions, as well as of the scientific processes that make these products work.

16. Specifically, Mr. Odihi would be responsible for performing the following duties:

• Prepare and conduct technical presentation that explain power meter product features and functions to customers and prospective customers;
• Confer with customers and engineers to assess equipment needs and to determine system requirements;
• Recommend solutions, designs, alterations or application of company's products or services to satisfy the needs of the customer in keeping with company objectives;
• Report competitive or commercial issues relating to company's products or services to management;
• Utilize in-depth knowledge of engineering to describe in detail the full spectrum of major products and services offered by EIG to prospective customers;
• Maintain knowledge of industry trends and key competitors' products and services, and analyze architecture and integration of products, and provide competitive analysis for sales proposals
• Contribute to sales proposal and presentation, and collaborate with sales teams to determine customer requirements and to provide sales support;

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

  • Assist the Sales Team to develop and implement specific account penetration strategies;
  • Participate in product shows, exhibits and customer conferences;
  • Plan and modify products to meet customer needs;
  • Respond to technical questions during pre-sales stage;
  • Manage technical questions on post-sales deployments and upgrades, and resolve clients' inquiries and problems with installed equipment; and
  • Recommend improved meters to customers, explaining how changes will lower costs and/or increase production.

Exhibit A at 25-26.

15. EIG explained in its petition that:

> To build on the business growth and to further strengthen the company's operations, EIG seeks to continually employ Mr. Odihi as a professional Sales Engineer who has technical understanding of the complexities of EIG's products and services. Our sales engineer is required to not only understand and apply engineering knowledge but also understand how to sell power meters and our other industrial products to satisfy our customers' needs. Sales engineers are critical in our industrial and commercial operation as well as other industries around the world. Ourcustomers' buying decisions are based more on technical information and rational analysis. Our company's sales operation relies heavily on technical information and problem-solving to convince customers to place orders on our products and services. In view of the tremendous rate of expansion in business, it is undoubted that EIG will have sufficient regular, ongoing specialty occupation work for Mr. Odihi in the capacity of Sales Engineer.

Exhibit A at 26.

16. EIG submitted to the agency evidence that the job offered Mr. Odihi qualified as a specialty occupation because according to the Occupational Information Network (O*Net) Sales Engineers "Sell business goods or services, the selling of which requires a technical background equivalent to a baccalaureate degree in engineering." Exhibit B at 19.

17. EIG also demonstrated that the Department of Labor's Occupational Outlook Handbook provided that "Sales engineers typically need a bachelor's degree in engineering or a

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

related field." Exhibit B at 16, and that the term "typical" is synonymous with "normal". Exhibit B at 9.

18. Nevertheless, on October 9, 2018, the USCIS issued a decision conceding that "The duties described in the record are comparable to the duties of Sales Engineer", Exhibit C at 3-4, but nevertheless denying EIG's petition solely on the ground that " the evidence of record does not establish that the job offered qualifies as a specialty occupation under section 101(a)(15)(H)(i)(b) of the Act." Exhibit C at 6.

19. The decision dismissed the submitted language from the O*Net because:

> The O*NET provides only general information regarding the tasks and work activities associated with a particular occupation. The O*NET is not designed to assess the specialty occupation status of either occupations or particular positions within them. Rather, the O*NET and its Job Zone and Specific Vocational Preparation (SVP) ratings are meant to indicate only the total number of years of vocational preparation required for a particular position. The O*NET does not describe how those years are to be divided among training, formal education and experience. In addition, the O*NET makes no reference to a degree requirement in a specific field of study.

Exhibit C at 4.

20. The decision also disputed that the Occupational Outlook Handbook established that the job offered normally required a bachelor's degree in a specific specialty because:

> The OOH states the following regarding training and educational requirements for Sales Engineer positions:
> Sales engineers typically need a bachelor's degree in engineering or a related field. However, a worker without a degree, but with previous sales experience as well as technical experience or training, may become a sales engineer. Workers who have a degree in a science, such as chemistry, or in business with little or no previous sales experience, also may become sales engineers.

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

> University engineering programs generally require 4 years of study. They vary in content, but all programs include courses in math and the physical sciences. In addition, most programs require developing strong computer skills. Most engineering programs require students to choose an area of specialization. The most common majors are electrical, mechanical, or civil engineering, but some engineering departments offer additional majors, such as chemical, biomedical, or computer hardware engineering.
>
> The OOH does not indicate that a baccalaureate degree in a specific field of study is the minimum educational requirement for Sales Engineers positions.

*Id.*

18. This action ensued.

PERTINENT LAW

19. 5 U.S.C. § 706 provides in relevant pat that in an action under the Administrative Procedure Act:

The reviewing court shall--
…
**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--
**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

20. 8 U.S.C. § 1101 provides in relevant part that:

a)  As used in this Act--

(15)  The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens--

…

(H) an alien (i)… (b) who is coming temporarily to the United States to perform services … who meets the requirements for the occupation specified in section 214(i)(2) [8 U.S.C. § 1184(i)(2)

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

… and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 212(n)(1) … .

21. 8 U.S.C. § 1184(i) provides in relevant part that:

(i) "Specialty occupation" defined.

(1) Except as provided in paragraph (3), for purposes of section 101(a)(15)(H)(i)(b) [8 USCS § 1101(a)(15)(H)(i)(b)], section 101(a)(15)(E)(iii) [8 USCS § 1101(a)(15)(E)(iii)], and paragraph (2), the term "specialty occupation" means an occupation that requires--

(A) theoretical and practical application of a body of highly specialized knowledge, and

(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. … .

17. 8 C.F.R. § 214.2(h)(4)(ii) provides in relevant part that:

Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

22. 8 C.F.R. § **214.2(h)(4)(iii)(A) provides in relevant part:**

　　　　Standards for specialty occupation position. To qualify as a specialty occupation, the position must meet one of the following criteria:

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

**(1)** A baccalaureate or higher degree or its equivalent is ==normally== the minimum requirement for entry into the particular position; … .

COUNT I

THE AGENCY'S DECISION THAT EIG DID NOT OFFER MR. ODIHI A JOB IN A SPECIALTY OCCUPATION WAS NOT IN ACCORDANCE WITH LAW INASMUCH AS ENGINEERING IS DEFINED BY THE AGENCY'S OWN REGULATIONS AS A SPECIALTY OCCUPATION

23. 8 C.F.R. § 214.2(h)(4)(ii) provides a non-exhaustive list of fields that satisfy the specialty occupation requirement. *EG Enters. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728, 736 (E.D. Mich. 2006) ("EG correctly asserts that USCIS recognizes 'accounting' as a 'specialty occupation.' See 8 C.F.R. § 214.2(h)(4)(ii)."), *CareMax Inc. v. Holder*, 40 F. Supp. 3d 1182, 1185-86 (N.D. Cal. 2014) (the fields listed in 214.2(h)(4)(ii) "such as accounting, law, mathematics, engineering, medicine, … are presumed 'specialty occupations'"), *Cf. Fast Gear Distrib. v. Rodriguez*, 116 F. Supp. 3d 839, 846 (E.D. Mich. 2015) (apparently agreeing that "8 C.F.R. § 214.2 (h)(4)(iii) identifies 'engineering' as an example of a specialty occupation," but ruling against the employer because it did not establish that the job offered was in fact in the field of engineering).

24. The USCIS concedes that the job offered Mr. Odihi is that of a Sales Engineer.

25. Inasmuch a Sales Engineers "Sell business goods or services, the selling of which requires a technical background equivalent to a baccalaureate degree in engineering" Sales Engineering is within the field of Engineering.

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

26. Therefore the USCIS's decision finding that the job offered the beneficiary was not in a specialty occupation was not in accordance with law inasmuch as a job in the field of engineering is by regulatory definition a specialty occupation.

COUNT II

THE AGENCY'S DECISION THAT THE JOB OFFERED MR. ODIHI DOES NOT NORMALLY REQUIRE A BACCALAUREATE DEGREE IN A SPECIFIC SPECIALTY IS ARBITRARY AND CAPRICIOUS BECAUSE IT IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE

27. "Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (B.I.A. October 20, 2010). "The 'preponderance of the evidence' standard requires that the evidence demonstrate that the applicant's claim is 'probably true,' where the determination of 'truth' is made based on the factual circumstances of each individual case." *Id.* at 376.

28. As noted, 8 C.F.R. § 214.2(h)(4)(iii)(A) provides that a job qualifies as a specialty occupation if "A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;". The record shows that the Department of Labor sponsored Occupational Information Network provides that Sales Engineers are those who "Sell business goods or services, the selling of which requires a technical background equivalent to a baccalaureate degree in engineering."

29. Further, the Department of Labor's own Occupational Outlook Handbook provides that "Sales engineers typically need a bachelor's degree in engineering or a related field.".

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

30. Inasmuch as the term "typically" is synonymous with "normally", https://www.merriam-webster.com/thesaurus/typically, both the Occupational Information Network and Occupational Outlook Handbook show that the job of Sales Engineer requires at least a bachelor's degree in a specific specialty, namely engineering.

31. Inasmuch as the record contains evidence showing that it is probably true that the job of Sales Engineer offered to Mr. Odihi is a specialty occupation, and no evidence whatsoever it is not probably true, therefore there is no substantial evidence in the record showing that EIG failed to carry its burden of proof on this issue.

32. In particular, the basis upon which the decision attempts to refute the fact that both the Occupational Information Network and the Occupational Outlook Handbook establish that the job normally requires a Bachelor's degree in Engineering or a related field are either unsupported in the record or simply erroneous.

33. The USCIS's assertion that "The O*NET is not designed to assess the specialty occupation status of either occupations or particular positions within them." is entirely unsupported by the record which is bereft of any evidence that the O*Net was not so designed, and actually directly contradicted by the fact that the O*Net's expressly provides that Sales Engineers ""Sell business goods or services, the selling of which requires a technical background equivalent to a baccalaureate degree in engineering."

34. It is further entirely irrelevant that " the O*NET and its Job Zone and Specific Vocational Preparation (SVP) ratings are meant to indicate only the total number of years of

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

vocational preparation required for a particular position" and that "The O*NET does not describe how those years are to be divided among training, formal education and experience" inasmuch as EIG does not rely upon either the O*Net's Job Zone nor its SVP ratings.

35. Furthermore, the claim that " the O*NET makes no reference to a degree requirement in a specific field of study" is simply wrong inasmuch as its description of Sales Engineer most certainly does make reference to the fact that Sales Engineers sell business goods or services, the selling of which requires a technical background equivalent to a baccalaureate degree in engineering.

36. Finally the claim that "The OOH does not indicate that a baccalaureate degree in a specific field of study is the minimum educational requirement for Sales Engineers positions." Is irrelevant because 8 C.F.R. § 214.2(h)(4)(iii)(A) provides that a job qualifies as a specialty occupation if "A baccalaureate or higher degree or its equivalent is **normally** the minimum requirement for entry into the particular position;" (emphasis supplied).

37. Since "typically" is synonymous with normally, the fact that the OOH provides that "Sales engineers typically need a bachelor's degree in engineering or a related field" establishes that the job normally requires a bachelor's degree in a specific specialty, even if there are some (abnormal) instances where one may qualify as a Sales Engineer without such a degree.

38. Accordingly, inasmuch as the record shows that it is at least "probably true" that the job of Sales Engineer offered to Mr. Odihi is a specialty occupation, and there is nothing in the record to the contrary, the USCIS's conclusion that the job offered is not in a specialty occupation is not supported by substantial (or any) evidence and so is arbitrary and capricious. *Assn of Data*

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

*Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 745 F.2d 677, 683-84 (D.C.Cir.1984)) (Scalia, J.).

## COUNT III

THE USCIS'S HOLDING THAT EIG COULD NOT ESTABLISH THAT THE JOB OFFERED WAS IN A SPECIALTY OCCUPATION BY SHOWING THE EMPLOYER NORMALLY REQUIRES AT LEAST A BACHELOR'S DEGREE IN A SPECIFIC FIELD OR ITS EQUIVALENT FOR THE POSITION IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND DIRECTLY CONTRADICTS THE PLAIN LANGUAGE OF 8 CFR 214.2(h)(4)(iii)(A)(3)

39. The record contains substantial evidence that EIG normally requires at least a bachelor's degree in a specific specialty or equivalent, for the job offered. Exhibit B at 47-57.

40. Nevertheless, the USCIS held that this evidence did not establish that the job was a specialty occupation because:

> While you claim that the offered position requires a degree, your opinion alone cannot establish the position as a specialty occupation. The critical element is not the title of the position or an employer's self-imposed standards, but whether the position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a baccalaureate or higher degree in the specific specialty, as the minimum for entry into the occupation as required by the Act.
> If USCIS was limited solely to reviewing a petitioner's self-imposed requirements, then any individual with a bachelor's degree could be brought to the United States to perform any occupation as long as the employer required the individual to have a baccalaureate or higher degree. See Defensor v. Meissner, 201 F.3d. 384 (5th Cir. 2000). Therefore, the evidence of record does not satisfy the third criterion at 8 CFR 214.2(h)(4)(iii)(A)(3): that the employer normally requires a degree, or its equivalent, in a specific specialty for the position.

41. As noted above, 8 C.F.R. § 214.2(h)(4)(iii)(A) provides in relevant part that:

To qualify as a specialty occupation, the position must meet one of the following criteria: …

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

...
(3) The employer normally requires a degree or its equivalent for the position; … .

42. The decision in this matter does not identify any evidence in the record showing that EIG failed to satisfy this criterion. Accordingly, this portion of the decision is unsupported by substantial evidence and on this ground alone should be reversed as arbitrary and capricious. *David Parsons & Assocs. v. Ridge*, 220 F. App'x 625, 626 (9th Cir. 2007) (Because "the agency provided no explanation as to why the evidence was insufficient to qualify for an H-1B visa under the fourth criterion. Nor did the agency indicate what additional evidence would satisfy this criterion" therefore the decision was reversed.).

43. Further, the agency's decision is actually contrary to law in that it expressly rejects the plain language of § 214.2(h)(4)(iii)(A)(3) by holding that "If USCIS was limited solely to reviewing a petitioner's self-imposed requirements, then any individual with a bachelor's degree could be brought to the United States to perform any occupation as long as the employer required the individual to have a baccalaureate or higher degree."

44. In fact § 214.2(h)(4)(iii)(A)(3) does expressly hold that a job qualifies as a specialty occupation if "The employer normally requires a degree or its equivalent for the position". The fact that the agency may no longer agree with this regulation is insufficient grounds for it to no longer comply with it.

45. *Defensor v. Meissner*, 201 F.3d. 384 (5th Cir. 2000) is not to the contrary. The *Defensor* court merely wondered aloud but did not decide "if § 214.2(h)(4)(iii)(A) is read to create a necessary and sufficient condition for being a specialty occupation," that might bring about a

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

result not intended by Congress. Ultimately it decided that "Giving Vintage the benefit of the doubt we will assume arguendo that § 214.2(h)(4)(iii)(A) creates necessary and sufficient conditions for the category of 'specialty occupation'." *Defensor*, 201 F.3d at 387.

45. Agency regulations on which individuals are "entitled to rely" bind the agency. *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422 (1942). Certainly EIG is entitled to rely upon the USCIS's duly promulgated regulations in determining how to satisfy its staffing needs.

46. Therefore the agency's failure not only to find that EIG did not satisfy the requirements of § 214.2(h)(4)(iii)(A)(3), but in fact to even consider that possibility because it apparently no longer agrees with this regulation, is not merely unsupported by evidence, but also not in accordance with, and in fact directly contrary to, law.

**WHEREFORE** it is respectfully requested that this Court hold unlawful and set aside the decisions denying EIG's petition for nonimmigrant worker upon Mr. Odihi's behalf and Mr. Odihi's application for change of nonimmigrant status on the grounds that they were both arbitrary and capricious and not in accordance with law.

Respectfully submitted this   day of November, 2018

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

646-845-9895
michaelpiston4@gmail.com

| COMPLAINT | Michael E Piston<br>Attorney for the Plaintiffs<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|